TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00589-CR






The State of Texas, Appellant



v.



Sara Bradley a/k/a Sara Rudy, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-97-0293-S, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING







 Appellee Sara Bradley was indicted for possession of cocaine and marihuana. Tex. Health
& Safety Code Ann. §§ 481.115, 481.121 (West Supp. 1998). The district court granted her pretrial
motion to suppress evidence seized during a search of her residence. The State appeals from that order. 
Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 1998). We will reverse.


1. Standard of review.

 The challenged search was conducted pursuant to a warrant. No search warrant may issue
unless supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. 
Tex. Code Crim. Proc. Ann. arts. 1.06 (West 1977), 18.01(b) (West Supp. 1998). Probable cause to
support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to
justify a conclusion that the object of the search is probably on the premises at the time the warrant is
issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); Hackleman v. State, 919
S.W.2d 440, 447 (Tex. App.--Austin 1996, pet. ref'd untimely filed). The sufficiency of a search warrant
affidavit is determined by use of "totality of the circumstances" analysis. Illinois v. Gates, 462 U.S. 213,
234 (1983); Hennessy v. State, 660 S.W.2d 87, 90 (Tex. Crim. App. 1983); see State v. Martin, 833
S.W.2d 129 (Tex. Crim. App. 1992). Only the facts found within the four corners of the affidavit may be
considered. Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992). Reasonable inferences may
be drawn from the affidavit, however, and the affidavit must be interpreted in a common sense and realistic
manner. Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); Carroll v. State, 911
S.W.2d 210, 216 (Tex. App.--Austin 1995, no pet.).

 After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form
of de novo review. Instead, the issuing magistrate's determination of probable cause should be given great
deference by reviewing courts, and should be sustained so long as the magistrate had a substantial basis
for concluding that a search would uncover evidence of wrongdoing. Gates, 462 U.S. at 236; Johnson
v. State, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990); Bower v. State, 769 S.W.2d 887, 902 (Tex.
Crim. App. 1989). (1) As the Supreme Court explained, "search and arrest warrants long have been issued
by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial
refinement of the nature of 'probable cause.'" Gates, 462 U.S. at 235. Judicial review of the decision to
issue a search warrant must take into account that many warrants are issued on the basis of nontechnical,
common-sense judgments of laymen applying a standard less demanding than that used in formal legal
proceedings. Id. at 235-36. Moreover, the Fourth Amendment has a strong preference for searches
conducted pursuant to warrants, and a "grudging or negative attitude by reviewing courts toward warrants"
might encourage police officers to resort to warrantless searches in the hope that some exception to the
warrant requirement might arise. Id. at 236.

 In summary, the task of the issuing magistrate is simply to make a practical, common-sense
decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and
basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or
evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to
ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id. at 238-39;
Hennessy, 660 S.W.2d at 89.

 We are aware that the Court of Criminal Appeals has recently revisited the subject of
appellate review of probable cause determinations. See Guzman v. State, 955 S.W.2d 85 (Tex. Crim.
App. 1997). In Guzman, the court stated that a trial court's finding of probable cause is a mixed question
of law and fact that reviewing courts should generally review de novo. Id. at 89. Guzman, however,
involved a warrantless arrest and search, and did not speak to the review of a magistrate's determination
that probable cause is stated in a search warrant affidavit. The Guzman opinion draws on the reasoning
of the United States Supreme Court in Ornelas v. United States, 517 U.S. 690 (1996). In Ornelas, the
court held that questions of reasonable suspicion and probable cause arising out of warrantless searches
should be reviewed de novo on appeal. Id. at ___. The court was careful to distinguish appellate review
of a warrantless search from appellate review of a magistrate's decision to issue a search warrant. Citing
Gates, the court stated that "the scrutiny applied to a magistrate's probable-cause determination to issue
a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would
eliminate the incentive" for police to obtain a warrant. Id. at ___. Given Guzman's reliance on Ornelas,
we do not understand Guzman to alter previous holdings by the Court of Criminal Appeals that a
magistrate's probable cause determination is not subject to de novo review.


2. The search warrant affidavit.

 The affidavit in this cause sought a warrant to search appellant's house in San Angelo and
a pickup truck located on the premises. The affiant was San Angelo police officer Mitch Landry. We
summarize the pertinent portions of the affidavit:


 Landry and another officer had been told by a confidential informer that "he
(confidential informant) has personally been to the Suspected Place and has personally
seen a person known to the confidential informant as 'Sara' in possession of cocaine
at the Suspected Place. The confidential informant has personal knowledge that 'Sara'
sells one ounce quantities of cocaine for eight hundred and fifty dollars ($850.00)." This
informer had provided accurate information regarding unlawful drug activity on other
occasions.


 A second confidential informer had told Landry that "he has personally seen an
unknown female driving the above described pickup deliver quantities of cocaine while
driving the described pickup." This informer had given Landry accurate information
regarding unlawful drug activity on three previous occasions.

 On February 26, 1997, the day the affidavit was executed and the warrant was issued,
Landry and another officer "went to the Suspected Place and retrieved several trash
bags from the trash receptacles located in the alley way behind the Suspected Place. 
The trash receptacle area is a small area which is enclosed by a wooden fence which
is attached to the back fence of the suspected Place . . . ." The trash bags were
searched at police headquarters. In one of the trash bags, "Affiant discovered a plastic
bag containing a white powdery substance . . . and a piece of paper which had the
name Sara Bradley written on it." A field test of the white powder was positive for
cocaine. "While searching another trash bag Affiant discovered assorted papers with
handwritten numerical entries. Some of the entries indicate 850 as a common entry in
the paperwork."


 "Affiant knows through his training and experience that persons involved in the use and
trafficking of illegal drugs will often conceal said drugs inside their residences and
vehicles . . . . Affiant also knows that these persons will often keep records of the drug
transactions . . . ."



3. The district court's ruling.

 The only evidence adduced at the hearing on Bradley's motion to suppress was Landry's
affidavit. Bradley argued that the affidavit did not state probable cause to believe that cocaine or other
contraband would be found in her residence on the day the warrant was requested because the affidavit
did not state when the confidential informers made the observations they reported to the police. Although
the affidavit did state that cocaine had been found in a trash bag recovered that day, Bradley argued that
this did not give the magistrate probable cause to believe that cocaine was then in the house because there
was no showing as to when the trash bags were deposited in the receptacle.

 The district court obviously found merit in Bradley's argument. The court stated:


I will have to say I am not very impressed with the search warrant [affidavit]. I don't know
why somebody doesn't bother to say when they got their information. The question that
I am going to have to deal with is, does the information [regarding the trash bags], which
collaborates, shows independent collaboration of the information furnished by the
informant, does it sufficiently, by having a date of February 26th, 1997, being the date they
searched the trash.


. . .


 Does that sufficiently see to it that it makes, on the four corners, everything fresh?
. . . If it doesn't, then you have got a good Motion to Suppress. If it does, then you don't.



 The court's written order granting the motion to suppress does not state the basis for the
ruling. We infer from the court's remarks at the hearing that it found the facts stated in the affidavit to be
insufficiently recent to support the conclusion that contraband could then be found in Bradley's residence.

 Probable cause has an important time element. Probable cause ceases to exist when it is
no longer reasonable to presume that items once located in a specified place are still there. Conversely,
it may be reasonable under all the circumstances to presume that they are still where they once were, even
after a considerable lapse of time. Among the factors that may be considered when evaluating the
reasonableness of a magistrate's inference that the suspect property is likely to be found where it was last
seen are the length of time elapsed, the nature of the property, the nature of the criminal activity, and the
likelihood that the contraband might be moved. Gonzales v. State, 761 S.W.2d 809, 813 (Tex.
App.--Austin 1989, pet. ref'd).

 A reliable informer told the police that he had been to Bradley's house, had seen a person
named Sara in possession of cocaine, and "has personal knowledge that 'Sara' sells one ounce quantities
of cocaine" for $850. The use of the present-tense "sells" supports an inference that Sara's drug business
was an ongoing one. See and compare Sutton v. State, 419 S.W.2d 857, 861 (Tex. Crim. App. 1967),
with Heredia v. State, 468 S.W.2d 833, 835 (Tex. Crim. App. 1971). A second reliable informer told
the officers that "he has personally seen an unknown female," whom the magistrate could reasonably infer
was Sara, deliver cocaine while driving the pickup truck parked at Bradley's house. On the day the
warrant was issued, cocaine was found in the trash receptacle behind the house, together with papers
bearing Sara Bradley's name and numerical entries that appeared to be records of $850 sales. From his
training and experience, Landry knew that drug dealers often conceal their unlawful merchandise in their
residences. We conclude that the affidavit, when read in a common-sense and realistic manner, gave the
issuing magistrate a substantial basis for concluding that Sara Bradley, the occupant of the suspect premises,
was then engaged in the business of selling cocaine. From this, the magistrate could reasonably conclude
that contraband like that previously seen by the informers could be found in the suspect residence at the
time the warrant issued. See State v. Raymer, 786 S.W.2d 15, 17 (Tex. App.--Dallas 1990, no pet.).

 As previously stated, the task of a reviewing court, which in this case includes the district
court, is not to determine de novo whether a search warrant affidavit states probable cause, but rather is
to ensure that the issuing magistrate had a substantial basis for concluding that probable cause was shown. 
Gates, 462 U.S. at 461-62; Hennessy, 660 S.W.2d at 89. The resolution of doubtful or marginal cases
in this area should be largely determined by the preference to be accorded to warrants. United States v.
Ventresca, 380 U.S. 102, 109 (1965); Hennessy, 660 S.W.2d at 92. Keeping this preference for the
warrant process in mind, and giving the magistrate's probable cause determination the deference it is due,
we conclude that the magistrate had a substantial basis for concluding that probable cause existed and that
the district court erred by granting Bradley's motion to suppress.

 The State's point of error is sustained. The order granting the motion to suppress is
reversed and the cause is remanded to the district court for further proceedings.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Davis*

Reversed and Remanded

Filed: April 24, 1998

Publish













* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).
1. The Court of Criminal Appeals has disapproved language in Johnson and Bower to the effect that
article I, section 9 of the Texas Constitution should always be interpreted in conformity to Supreme Court
opinions interpreting the Fourth Amendment. Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim.
App. 1991). That court has not, however, overruled the substantive holding that Gates analysis should be
applied under article I, section 9. Neither Bradley nor the State contends that the federal and state
constitutions differ with respect to the standard of review of a magistrate's probable cause determination.



e of the property, the nature of the criminal activity, and the
likelihood that the contraband might be moved. Gonzales v. State, 761 S.W.2d 809, 813 (Tex.
App.--Austin 1989, pet. ref'd).

 A reliable informer told the police that he had been to Bradley's house, had seen a person
named Sara in possession of cocaine, and "has personal knowledge that 'Sara' sells one ounce quantities
of cocaine" for $850. The use of the present-tense "sells" supports an inference that Sara's drug business
was an ongoing one. See and compare Sutton v. State, 419 S.W.2d 857, 861 (Tex. Crim. App. 1967),
with Heredia v. State, 468 S.W.2d 833, 835 (Tex. Crim. App. 1971). A second reliable informer told
the officers that "he has personally seen an unknown female," whom the magistrate could reasonably infer
was Sara, deliver cocaine while driving the pickup truck parked at Bradley's house. On the day the
warrant was issued, cocaine was found in the trash receptacle behind the house, together with papers
bearing Sara Bradley's name and numerical entries that appeared to be records of $850 sales. From his
training and experience, Landry knew that drug dealers often conceal their unlawful merchandise in their
residences. We conclude that the affidavit, when read in a common-sense and realistic manner, gave the
issuing magistrate a substantial basis for concluding that Sara Bradley, the occupant of the suspect premises,
was then engaged in the business of selling cocaine. From this, the magistrate could reasonably conclude
that contraband like that previously seen by the informers could be found in the suspect residence at the
time the warrant issued. See State v. Raymer, 786 S.W.2d 15, 17 (Tex. App.--Dallas 1990, no pet.).

 As previously stated, the task of a reviewing court, which in this case includes the district
court, is not to determine de novo whether a search warrant affidavit states probable cause, but rather is
to ensure that the issuing magistrate had a substantial basis for concluding that probable cause was shown. 
Gates, 462 U.S. at 461-62; Hennessy, 660 S.W.2d at 89. The resolution of doubtful or marginal cases
in this area should be largely determined by the preference to be accorded to warrants. United States v.
Ventresca, 380 U.S. 102, 109 (1965); Hennessy, 660 S.W.2d at 92. Keeping this preference for the
warrant process in mind, and giving the magistrate's probable cause determination the deference it is due,
we conclude that the magistrate had a substantial basis for concluding that probable cause existed and that
the district court erred by granting Bradley's motion to suppress.

 The State's point of error is sust